**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **BRANDON STEVEN MOTORS, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.** |
| | ) | |
| **LANDMARK AMERICAN** | ) | |
| **INSURANCE COMPANY** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

Plaintiff Brandon Steven Motors, LLC ("BSM") alleges the following claims for breach of contract and breach of the duty of good faith and fair dealing against Defendant Landmark American Insurance Company ("Landmark"):

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Brandon Steven Motors, LLC is a limited liability company organized under the laws of the State of Kansas, with its members located in Kansas.

2.      Defendant Landmark American Insurance Company is a corporation organized under the laws of the State of New Hampshire, with its principal place of business in Georgia. Landmark is authorized to transact business and has transacted substantial business in Kansas, and avails itself of the laws of the State of Kansas. Accordingly, the Court has personal jurisdiction over Defendant.  Pursuant to the insurance policy at issue in this action, Defendant may be served by service on the Kansas Insurance Commissioner, 420 SW 9th Street, Topeka, Kansas 66612.

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are diverse in citizenship and the amount in controversy is greater than $75,000, exclusive of interest and costs.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) or (b)(3), as a substantial part of the events giving rise to BSM's claims arose in this District, or a substantial part of property that is the subject of this action is situated in this District.

## GENERAL ALLEGATIONS

5.     BSM incorporates by reference each and every allegation contained in paragraphs 1 through 4 of this Complaint.

6.     This is an action for breach of contract, breach of the duty of good faith and fair dealing, and statutory recovery of attorney fees, interest, and other recoverable damages.

## THE POLICY

7.     BSM purchased from Landmark an insurance policy for Dealers Open Lot Coverage, Policy No. LHT905483 (Policy"), with a policy period of August 31, 2018 to August 31, 2019. A true and correct copy of the Policy is attached hereto as Exhibit 1.

8.     BSM paid to Landmark $1,452,465.00 in exchange for the Policy's security and payment in case of a covered loss.

9.     Under the Policy's provisions, Landmark agreed to pay for "direct physical destruction, theft or damage to a covered 'automobile'" caused by windstorm, including hailstorm.

10.     The Policy also provides that "[i]n the event of any loss or damage covered hereunder the Insured shall give the Company a reasonable time and opportunity to examine the insured units before any repairs are begun or any physical evidence of damage removed."

11.     There is a $2,500,000 limit of liability per occurrence under the Policy.

## MAY 5, 2019 STORM AND LANDMARK'S ADJUSTERS

12.     On the evening of May 5, 2019, a BSM car dealership was hit by a storm, causing damage to hundreds of vehicles on the premises.

13.     BSM reported the loss to Landmark the very next day on May 6, 2019.

2

14.    BSM simply reported that there had been a loss because of a storm, and did not itself provide a number for the loss or any explanation of the specific cause of damage from the storm. That was left to Landmark and its adjusters.

15.    On May 7, 2019 Landmark sent a team of adjusters ("Expert Auto Claims") to inspect the damaged vehicles and prepare an appraisal of damages on which Landmark would pay for BSM's losses.

16.    The Expert Auto Claims adjusters sent by Landmark spent several days at the premises and personally inspected the damaged vehicles.

17.    By June 24, 2019, Expert Auto Claims sent to Landmark a spreadsheet with the Dollar amount of BSM's losses that should be paid by Landmark pursuant to the Policy.

18.    Expert Auto Claims determined that Landmark owed to BSM $2,300,949.19 for the loss, which was "Total After Deductible."

19.    BSM agreed to the $2,300,949.19 number prepared by Landmark's adjusters, and that continues to be the number demanded for payment in this action in addition to other damages, interest, and attorney fees.

**LANDMARK'S EXTRAORDINARY DELAY AND FAILURE TO PAY THE AMOUNTS DETERMINED BY THE ADJUSTERS IT RETAINED**

20.    Based on the Expert Auto Claims spreadsheet, Landmark wrote to BSM on June 26, 2019, that Landmark would just "need one more item from Expert Auto that they said I should have by Friday" in order to pay the claim.

21.    Only July 1, 2019, BSM followed up with Landmark, which simply responded on July 2, 2019, that "I continue to work on getting everything I need processed, so my investigation continues." Landmark's explanation for "why this claim is taking so long to close" was simply that "we are getting a split between the wind and the hail damage."

22.    The Policy does not treat any differently loss from "wind" and loss from "hail" as part of a storm.

23. Instead of payment, Landmark sent a reservation of rights letter on July 3, 2019, stating for the first time that ""[a]ccording to Landmark's investigation to date, the sustained wind speeds at the loss location on May 5, 2019 may not have reached a velocity necessary to cause damage to vehicles."

24. Landmark further stated, without basis, that "Landmark also has concerns about whether BSM has misrepresented or concealed material facts from landmark during its investigation of the claimed loss."

25. In the fifteen weeks that have passed since the time of Landmark's manufactured reservation of rights letter, it has not provided any substantiation of its statements of concern that there was insufficient wind to cause damage – the very damage observed and calculated by Landmark's selected adjusters.

26. By July 10, 2019, Landmark confirmed that it received the "spreadsheet isolating the wind damage from the hail damage" – the only item Landmark had stated on June 26th that it was waiting upon in order to make payment.

27. There is not any difference or split under the Policy for damages caused by wind or damages caused by hail, nor did BSM make any representations regarding how the vehicles were damaged. BSM had simply informed Landmark that there had been a storm that damaged its vehicles, and Landmark sent in a team of adjusters whose conclusions Landmark disregarded in order to not pay on this valid claim.

28. On July 18th - approximately ten weeks after Landmark first received BSM's claim – Landmark had a phone call with BSM wherein Landmark stated that it would retain an investigation company (G4S) to do some "preliminary research" on the dealership location and wind speeds. Landmark has not provided any explanation for the discrepancy between its July 3rd assertion that it had done research into the storm, and its July 18th assertion that it retained a firm to do "preliminary research."

29.     Landmark has not provided any information on this "preliminary research" by G4S that was inexplicably begun **10 weeks after** the claim had been reported, and has apparently abandoned whatever attempts it was making G4S to manufacture a way to deny BSM's claim.

30.     During the same July 18th call, Landmark confirmed that it had no cause for concern from the information G4S provided, and yet inexplicably asserted that Landmark still took the position that damage to the vehicles due to wind was man-made.

31.     At the time of this filing, Landmark has not even attempted to provide any information or justification whatsoever for its wholly made-up assertion of "man-made" wind damage that it used as a pretext to avoid paying on a Policy for which BSM paid over $1 million in premiums.

32.     To further delay payment on BSM's claim, Landmark retained an attorney by July 29th, in order to request – **for the very first time and nearly three months after the claim had been tendered** – certain documents.

33.     On July 30th, a Landmark representative stated that "I am reviewing the document supports we have collected so far at this time, so I do not have anything to provide to you regarding the wind v. hail split."

34.     Yet Landmark already received the wind v. hail split (which is wholly irrelevant under the Policy, and was never asserted in any way by BSM) from GS4 by July 10th – three weeks prior to this statement that Landmark was just now reviewing the document supports.

**LANDMARK'S CONTINUED DELAY BY REQUESTING DOCUMENTS ALREADY IN ITS POSSESSION AND CREATING ADDITIONAL HURDLES**

35.     On August 8, 2019, BSM sent an email to Landmark outlining the incredible delays and excuses for nonpayment over the prior three months and demanding payment. A true and correct copy of the August 8, 2019 email is attached hereto as Exhibit 2.

36.     Having not heard any response from Landmark, BSM sent an email to BSM on August 13th asking that Landmark "please kindly respond to my email."

37.     On August 14th Landmark responded with a letter requesting documents Landmark already had for months (and which it had created through its retained adjusters), and also demanding, for the very first time over three months after the claim had been submitted, an examination under oath. A true and correct copy of Landmark's August 14, 2019 letter is attached hereto as Exhibit 3.

38.     Landmark made these requests more than one-hundred days after the date of claim, even though Kansas regulations require that "[e]very insurer shall complete investigation of a claim within thirty days after notification of claim, unless such investigation cannot reasonably be completed within such time." Kansas Admin. Reg. § 40-1-34 & Unfair Claims Settlement Practices Model Regulations § 7.

39.     On August 20th BSM sent a response explaining how Landmark already had the requested documents (and had, indeed, created through its retained adjusters most of the requested documents), and demanding payment because the extraordinary delay was unacceptable. A true and correct copy of BSM's August 20, 2019 letter is attached hereto as Exhibit 4.

40.     Landmark responded on August 30, 2019, making the false assertion that BSM had not "produced any of the documents, before or after my letter was sent, responsive to Landmark's eleven (11) specific requests for documents." A true and correct copy of Landmark's August 30, 2019 letter is attached hereto as Exhibit 5.

41.     BSM sent a response on September 6, 2019, in order to move along the inexcusable delay on such a large loss, and provided documents responsive to the eleven requests. That letter explained how "over 120 days have now passed," and provided "responses to each of your 11 requests for documents explaining how those documents **are already in Landmark's possession**, contradicting its bad faith and transparently unfounded denial that it does not have any of the documents." A true and correct copy of BSM's September 6, 2019 letter is attached hereto as Exhibit 6.

42.     Every document provided by BSM in its September 6, 2019 letter, other than the sworn declaration that Landmark requested for the first time months after the date of claim, was already in Landmark's possession for months.

43.     Landmark also tried to delay its late-requested examination under oath, while BSM demanded that it take place "within the next two weeks."

44.     After further delay by Landmark, the examination under oath took place on September 27, 2019.

45.     Nothing from the examination under oath changed the amounts owing that had already been determined by Landmark's own retained adjusters over three months earlier, and was all information already known to Landmark or that could have been discovered by Landmark within the first thirty days of claim.

46.     Given the extraordinary delay that had already taken place, BSM's counsel sent emails to Landmark's counsel on October 3rd, October 4th, October 7th, October 10th, October 11th, October 14th, and October 15th demanding payment on a claim that had been outstanding for over five months.

47.     Other than a phone call on October 6th, Landmark did not respond to these demands for a response and for payment.

48.     On October 16th BSM sent a letter to Landmark recognizing that "[t]here is simply no dispute here and payment should have been made months ago. Please confirm by Monday, October 21, 2019, that Landmark will make payment for the amounts documented by its adjusters, with interest for the past 5 ½ months." A true and correct copy of BSM's October 16, 2019 letter is attached hereto as Exhibit 7.

49.     On October 18th Landmark finally sent a letter, but continued to delay any payment on the claim and continuing its practice of demanding unnecessary and irrelevant documents that simply further create delay on Landmark's payment obligations.

50.     As of the date of this filing, Landmark has not paid anything whatsoever on BSM's May 5, 2019 loss, despite adjusters retained by Landmark having calculated the amount owing by June 24, 2019, which amount BSM agreed to accept.

## COUNT I
### (Breach of Contract)

51.     BSM incorporates by reference each and every allegation contained in paragraphs 1 through 49 of this Complaint.

52.     The Policy is a valid contract between BSM and Landmark.

53.     The Policy requires Landmark to pay BSM the $2,300,949.19 that the adjusters retained by Landmark determined was the amount owing "Total After Deductible."

54.     Landmark has breached the contract by refusing to pay BSM the amounts owing under the Policy.

55.     BSM has been damaged by Landmark's breach.

## COUNT II
### (Contractual Breach of Duty of Good Faith and Fair Dealing)

56.     BSM incorporates by reference each and every allegation contained in paragraphs 1 through 55 of this Complaint.

57.     Landmark has a duty of good faith and fair dealing under the Policy.

58.     Landmark has breached its duty of good faith and fair dealing, including as set forth in paragraphs 20 through 50 above.

59.     Landmark's conduct lacked a reasonable basis.

60.     Landmark compelled BSM to file this lawsuit to recover the benefits to which it is entitled under the Policy.

61.     Landmark's bad faith in failing to make a reasonable investigation and otherwise failing to follow Policy requirements has caused BSM damages.

70978851.2

WHEREFORE, BSM respectfully requests judgment as follows:

A.     An award against Landmark of damages, in the amount established by the evidence;

B.     An award against Landmark of reasonable attorneys' fees, costs and disbursements for this action, as provided under K.S.A. § 40-256, and other applicable law;

C.     An award for any and all pre-judgment and post-judgment interest at the rate applicable under the law; and

D.     For such other and further relief as this Court deems just, equitable, or proper.

## **DEMAND FOR JURY TRIAL**

BSM hereby demands a trial by jury on all issues so tryable.

Dated: October 25, 2019

Respectfully submitted,

POLSINELLI PC

 */s/ Brendan L. McPherson*
BRENDAN L. MCPHERSON # 23771
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112
Telephone:  (816) 753-1000
Facsimile:  (816) 753-1536
bmcpherson@polsinelli.com

CARLYLE W. HALL III (pro hac vice forthcoming)
JONATHAN G. BRINSON (pro hac vice forthcoming)
CityScape, One E. Washington St., Ste. 1200
Phoenix, AZ 85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
chall@polsinelli.com
 jbrinson@polsinelli.com

ATTORNEYS FOR PLAINTIFF BRANDON
STEVEN MOTORS, LLC

70978851.2