IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRANDON STEVEN MOTORS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> LANDMARK AMERICAN INSURANCE COMPANY, <br><br> Defendant. | Case No. 2:19-CV-02659-JAR-GEB |

**DEFENDANT LANDMARK AMERICAN INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF OBJECTION
APPEALING AUGUST 12, 2020 DISCOVERY ORDER**

Defendant Landmark American Insurance Company ("Landmark") hereby files this memorandum in support of its objections appealing certain portions of the August 12, 2020 Order entered by Magistrate Judge Gwynne E. Birzer [Doc. 56], respectfully showing the Court as follows:

## I. INTRODUCTION

This action arises out of a first-party insurance claim made by plaintiff Brandon Steven Motors, LLC ("plaintiff") for coverage under a commercial property insurance policy issued by Landmark to plaintiff for alleged damage to approximately 327 vehicles at its car dealership, Eddy's Chrysler Dodge Jeep Ram, located at 11028 West Kellogg, Wichita, Kansas 67209, purportedly caused by hail and/or wind that occurred on May 5, 2019. [Doc. 1]. Upon receipt of plaintiff's insurance claim, Landmark immediately retained Expert Auto Claims, Inc. ("Expert Auto") as its independent adjuster to aid in the investigation of plaintiff's claim, including inspecting the claimed damages to the vehicles. [Doc. 53-2]. Shortly thereafter, questions arose about the existence, nature, and amount of the damages claimed by plaintiff, as Expert Auto

found the damage it observed to be questionable and inconsistent with typical wind and hail damage. [Doc. 58]. Due to its suspicions regarding plaintiff's claim, Landmark retained counsel and engaged its special investigative unit at G4S Compliance and Investigations, Inc. ("G4S") to conduct a fraud investigation. [Doc. 58]. However, before Landmark could complete its investigation, plaintiff filed this lawsuit. [Doc. 1].

Since this action commenced, the parties have been involved in an ongoing discovery dispute, as Landmark has not been provided with sufficient information or documents to appropriately assess plaintiff's claim, which was addressed for the first time in a discovery hearing on May 29, 2020. [Doc. 38]. As a result of this hearing, Magistrate Judge Birzer ordered plaintiff to produce only 150 deal jackets, of Landmark's choosing, and to supplement its responses to Landmark's first set of discovery, among other things. [Doc. 41]. Of the 150 deal jackets originally selected by Landmark, plaintiff was only able to produce 147, and of those 147, only two make any mention of repairs related to the May 5, 2019 storm. [Doc 58]. Furthermore, although Landmark requested documents regarding the specific damages to the vehicles, the completed repairs to the vehicles, the costs incurred by plaintiff to repair the damaged vehicles, and the discounts granted by plaintiff to its customers for the damage, the only documents that have been produced in response to those requests are the deal jackets, almost all of which fail to contain any specific information relating to the May 5, 2019 storm, and a 13-page invoice from USA Dent, who allegedly repaired the damaged vehicles for plaintiff. [Doc. 58].

On August 12, 2020, the parties participated in another discovery hearing. [Doc. 51]. At this hearing, Magistrate Judge Birzer ordered plaintiff to produce all deal jackets that have not already been produced for vehicles it claims were damaged as a result of the May 5, 2019 storm.

[Doc. 58]. Magistrate Judge Birzer also found, despite the absence of any motion for protective order or showing from plaintiff, that Landmark could not depose any of plaintiff's customers who purchased vehicles claimed to be damaged on the basis that the prejudicial effect of those depositions outweighs their relevance. [Doc. 58]. Furthermore, Magistrate Judge Birzer also ordered that certain communications between Landmark and its counsel[1], as well as certain communications with third parties, G4S[2] and Clyde & Co.[3], be produced, on the grounds that those documents are not protected by the work product doctrine, attorney-client privilege, or the common interest doctrine, as claimed by Landmark. [Doc. 58]. The same day, Magistrate Judge Birzer entered an Order requiring the following:

> (1) Regarding the various issues discussed during the conference, the parties should conduct discovery in accordance with the Court's rulings as pronounced at the conference, with all documents ordered produced to be exchanged by 8/28/2020; (2) Regarding Bates L001636-1637 and 1640 of Defendant's Amended Privilege Log, the Court, after a re-examination of the privilege log entries, orders those documents be produced by 8/28/2020 as well; and (3) the Court strongly encourages the parties, after proper conferral, to contact the undersigned's chambers regarding any subpoena issues before filing a discovery motion.

[Doc. 56].

Landmark now files its objection appealing certain portions of Magistrate Judge Birzer's Order. [Doc. 56]. First, the Order was clearly erroneous and contrary to law in holding that Landmark may not depose any customers who purchased vehicles claimed by plaintiff as damaged on May 5, 2019 based on a misapprehension of fact that the prejudicial effect of any

---

[1] Specifically, Bates Numbers: L13; L17; L1388; L1395 – L1401; L1404 [sic] - L1415; L1416 – L1424; L1458 – L1459; L1464 – L1465; L1483; L1009; L1079; L1307 – L1312; L1484 – L1485; L1498 – L1515; L1524 – L1527; L1533 – L1534, L1535 – L1536; L1538 – L1540; L1644 – L1647; L1648 – L1651; L1652 – L1654; L1718 – L1719; L1728; L1636 - L1637; and L1640. [Doc. 58].
[2] Specifically, Bates Numbers: L1675 - L1681; L1682 – L1688. [Doc. 58].
[3] Specifically, Bates Numbers: L1531 – L1532; L1575 – L1579; L1580 – L1583; L1584 – L1587; L1588 – L1591; L1592 – L1594; L1655 – L1657; L1693 – L1695; L1696 – L1698; L1658 – L1661; L1662 – L1664; L1665 – L1666; L1667 – L1668; L1669; L1670 – L1674; L1689 – L1692; L1700 – L1703; L1707 – L1708; L1716 – L1717; L1720. [Doc. 58].

such deposition outweighs its relevance. [Doc 58]. The Order was also clearly erroneous and contrary to law because Magistrate Judge Birzer incorrectly held that certain communications between Landmark and its counsel before commencement of this lawsuit, as well as certain communications with third parties, G4S and Clyde & Co LLP, are not protected by the work product doctrine, attorney-client privilege, or the common interest doctrine even though these privileges are applicable and the communications occurred after Landmark's investigation shifted to one in anticipation of litigation. [Doc 58].

## II. **LEGAL STANDARD**

28 U.S.C. § 636 provides that a district judge, having assigned certain pretrial matters to a magistrate judge, "may reconsider any pretrial matter...where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Under Federal Rule of Civil Procedure Rule 72(a) and Local Rule 72.1.4(a), after a magistrate judge rules on a nondispositive matter, either party may serve and file objections to the order within fourteen days. Fed. R. Civ. P. 72(a) and D. Kan. Rule 72.1.4(a). Once a party objects, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). *See also* D. Kan. Rule 72.1.4(a) ("The procedure for filing objections to an order of a magistrate judge in a nondispositive matter follows Fed. R. Civ. P. 72(a).").

"With respect to a magistrate judge's order relating to nondispositive pretrial matters, the district court does not conduct a de novo review; rather, the court applies a more deferential standard by which the moving party must show that the magistrate judge's order is 'clearly erroneous or contrary to law.'" ***United States Fire Ins. Co. v. Bunge N. Am., Inc.***, 244 F.R.D. 638, 641 (D. Kan. 2007) (citing ***First Union Mortgage Corp. v. Smith***, 229 F.3d 992, 995 (10th

Cir. 2000)) (citations omitted). Further, "[t]he clearly erroneous standard 'requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id*. (citing **Ocelot Oil Corp. v. Sparrow Indus.**, 847 F.2d 1458, 1464 (10th Cir. 1988)) (citations omitted).

### III. ARGUMENT AND CITATION OF AUTHORITY

#### A. The Magistrate Judge Erroneously Found That Deposing Plaintiff's Customers Would Be Damaging to Plaintiff's Business and Reputation.

It is well-established that the scope of discovery is broad, as the Federal Rules of Civil Procedure authorize discovery into

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). However, despite the above, Magistrate Judge Birzer found that taking of the deposition of any of plaintiff's customers, regardless of the limitations and parameters proposed by Landmark's counsel, would result in possible damage to the business and reputation of plaintiff such that the prejudicial effect outweighs any relevance. As illustrated by the court's findings in **Steven Volkswagen, Inc. v. Zurich Am. Ins. Co.**, No. 19-1161-JWB-ADM, 2019 U.S. Dist. LEXIS 206572 (D. Kan. Nov. 25, 2019), this conclusion is erroneous.

In **Steven Volkswagen**, the insurer sought to contact non-parties who had purchased certain vehicles from plaintiff, which plaintiff claimed had suffered wind damage. *Id*. at *2. In response, the plaintiff filed a motion for a protective order. While considering plaintiff's motion, the court initially reasoned that the potential for harm is clear when a car dealership's insurer endeavors to contact "a significant number of the dealership's clients to inquire about the auto

5

insurer's negotiations with these individuals." *Id*. at *12-13. Still, the court recognized that there was potential relevance to the discovery, and in balancing that relevance with the harm to the plaintiff, the court allowed the insurer to contact a smaller sample of customers, as doing so "does not carry with it the same large-scale risks to [plaintiff's] reputation." *Id*. at *14-15.  The court further limited the insurer's line of questioning to certain topics of inquiry. *Id*. at *15.

While Magistrate Judge Birzer was aware of the court's finding in *Steven Volkswagen*, the court distinguished that case from the instant matter, stating that in "the Steven Volkswagon [sic] case, money had already been paid by the insurance company and [Landmark] has not paid out anything in this case, as far as I know." [Doc. 58].  That is a distinction without a difference. The payment of funds is not the deciding factor in this determination; instead, as later articulated by Magistrate Judge Birzer, it is whether relevance outweighs any potential harm. [Doc. 58]. The information sought from these customers is highly relevant because it bears directly on the damages allegedly sustained by plaintiff's vehicles and the repairs performed.  Landmark has not been able to glean the information it seeks from any other source, as there is nothing within the produced documents that provide any meaningful information about the physical damage, repairs, or discounts associated with each vehicle.  By deposing customers, Landmark will also be able to hear testimony from truly neutral, disinterested witnesses, as any other individual set to be deposed on the issue of the existence and amount of plaintiff's claimed damages has a financial interest in the outcome of this matter, including USA Dent. Landmark is amenable to deposing only a small sample of customers on a limited number of topics, avoiding any avenues that would result in disparaging plaintiff's business, as ordered in *Steven Volkswagen* so as to avoid harming plaintiff's reputation, an offer it made during the hearing.

6

It bears noting that plaintiff's request that none of its customers be deposed is tantamount to a motion for protective order pursuant to Fed. R. Civ. P. 26(c)(1). While the decision to enter a protective order rests with the court, the ultimate burden is upon the ***requesting party*** to show good cause exists for such an order. **Reed v. Bennett**, 193 F.R.D. 689, 691 (D. Kan. 2000); *also see* **Sentry Ins. v. Shivers**, 164 F.R.D. 255, 256 (D.Kan.1996) (emphasis provided). Plaintiff, as the requesting party, has not done this. In determining "good cause," "the initial inquiry is whether the moving party [Plaintiffs] has shown that disclosure [] will result in a 'clearly defined and very serious injury.'" *See **Id.**; **Gulf Oil Co. v. Bernard***, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); **Zapata v. IBP, Inc.**, 160 F.R.D. 625, 627 (D.Kan.1995). The moving party must also make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." ***Id***. Here, plaintiff has failed to meet its burden because it has not even attempted to show that a limited deposition of even one of its customers will result in clearly defined, serious injury to its business.

For the foregoing reasons, the Magistrate Judge's ruling preventing Landmark from deposing any of plaintiff's customers is clearly erroneous and contrary to law.

### B. The Magistrate Judge Erroneously Found That Certain Communications Were Not Protected By The Work Product Doctrine, Attorney-Client Privilege, Or The Common Interest Doctrine.

In advance of the August 12, 2020 discovery hearing, Landmark prepared and submitted an amended privilege log to Magistrate Judge Birzer, which essentially contained three categories of documents: 1) communications between Landmark and its counsel; 2) communications with the special investigative unit at G4S; and 3) communications with Clyde & Co LLP. As identified and explained throughout the amended privilege log, these documents are protected by some combination of the work product doctrine, attorney-client privilege, and the

7

common interest doctrine; however, the Magistrate Judge found that the majority of the identified documents were not protected by any privilege despite evidence to the contrary, and ordered they be produced.

In a case based on diversity jurisdiction, attorney-client privilege is determined by state law. *See* Fed. R. Evid. 501.  In Kansas, the following elements are essential to attorney-client privilege:

> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.

***Taylor v. LM Ins. Corp.***, No. 19-1030-JWB, 2019 U.S. Dist. LEXIS 191038, at *12-13 (D. Kan. Nov. 4, 2019).  As identified throughout the amended privilege log, including those documents ordered produced[4], the communications between Landmark and its counsel during its fraud investigation meet the required standard and are protected by the attorney-client privilege.  In this instance, counsel was specifically involved in advising about the legal question of whether the policy provided coverage for plaintiff's loss due to possible misrepresentations or concealments of material facts by plaintiff.  Thus, certain correspondences reflect this legal advice, and should be protected accordingly.

Those communications between Landmark and its counsel are further protected by the work-product doctrine. As stated in Fed. R. Civ. P. 26(b)(3), "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety,

---

[4] Specifically, Bates Numbers: L13; L17; L1388; L1395 – L1401; L1404 [sic] - L1415; L1416 – L1424; L1458 – L1459; L1464 – L1465; L1483; L1009; L1079; L1307 – L1312; L1484 – L1485; L1498 – L1515; L1524 – L1527; L1533 – L1534, L1535 – L1536; L1538 – L1540; L1644 – L1647; L1648 – L1651; L1652 – L1654; L1718 – L1719; L1728; L1636 - L1637; and L1640. [Doc. 58].

indemnitor, insurer, or agent)." In Kansas, this not only means that such documents must be prepared in anticipation of litigation, but also that "the threat of litigation must be real and imminent." *Taylor v. LM Ins. Corp.*, No. 19-1030-JWB, 2019 U.S. Dist. LEXIS 191038, at *8 (D. Kan. Nov. 4, 2019) (citations omitted). In an investigation involving an insurance claim, "whether insurer and adjuster documents were created in anticipation of litigation depends on whether the party seeking protection can point to a definite shift made by the insurer or adjuster from acting in its ordinary course of business to acting in anticipation of litigation." *Id.* at *9.

Landmark's investigation of plaintiff's insurance claim shifted from an ordinary claims investigation to one in anticipation of litigation when Landmark obtained information from Expert Auto's adjusters regarding the inconsistent, questionable, and possibly manmade damages it observed during its inspections of plaintiff's vehicles, and consequently, suspected that plaintiff may have misrepresented the amount of its claim. It was because of these suspicions regarding plaintiff's claim that Landmark retained counsel on June 5, 2019, to seek advice on this coverage issue. As stated previously, Landmark's counsel was not involved in the ordinary course of Landmark's investigation of plaintiffs claim, but was concerned, instead, with the legal questions surrounding coverage for plaintiff's claimed loss in light of plaintiff's possible misrepresentations and concealment of material facts. In short, Landmark retained undersigned counsel Wayne D. Taylor to serve as its lawyer, not as its adjuster.

Additionally, while anticipation of litigation may be presumed to be unreasonable before an insurer reaches a final decision, "it is a rebuttable presumption, requiring the insurer to demonstrate, by specific evidentiary proof of objective facts, that a reasonable anticipation of litigation existed when the document was produced, and that the document was prepared and used solely to prepare for that litigation." *Id.* (citations omitted) (internal quotations omitted). In

9

this matter, as soon as red flags were raised by Expert Auto to Landmark regarding potential manmade damages, Landmark retained counsel for legal advice regarding plaintiff's claim. Furthermore, there is no bright-line rule that the ordinary course of business ends when a claims decision is made. *See **Id***. Insurance companies often involve lawyers early in the investigation process with an eye toward potential litigation rather than for the purpose of the claim adjustment, particularly when insurance fraud is suspected and obtaining appropriate legal advice is warranted. That is exactly what occurred here. Thus, communications with Landmark's counsel occurring on and after June 5, 2019 are also protected by the work-product doctrine, and Magistrate Judge Birzer's Order to the contrary is erroneous.

In the same way, Landmark also retained its special investigative unit at G4S to conduct a fraud investigation, which commenced in June 2019, soon after counsel was retained. G4S's investigation was conducted under the guidance of Landmark's counsel. *See **Travelers Home & Marine Ins. Co. v. HTP, Inc.***, No. 15-1371-EFM-GEB, 2017 U.S. Dist. LEXIS 198064, at *1 (D. Kan. Dec. 1, 2017). ("[T]he initial investigation of a potential claim, made by an insurance company prior to the commencement of litigation, and not requested by or made under the guidance of counsel, is made in the ordinary course of business of the insurance company, and not 'in anticipation of litigation or for trial . . .'") (emphasis added). Furthermore, "[t]he work-product doctrine can apply to a party 'or any representative acting on his behalf,' which may include attorneys, consultants, sureties, indemnitors, insurers, or agents. ***Taylor v. LM Ins. Corp.***, No. 19-1030-JWB, 2019 U.S. Dist. LEXIS 191038, at *9 (D. Kan. Nov. 4, 2019) (citations omitted). For these and the foregoing reasons, the communications between Landmark and G4S, which were focused solely on plaintiff's potential misrepresentation of material facts

and fraud, are protected from discovery under the word-product doctrine.[5] The Magistrate Judge's Order requiring these documents be produced is erroneous.

As to those communications with Clyde and Co LLP's attorneys,[6] they are further protected by the common-interest doctrine, which acts as an exception to waiver that may protect information and documents shared outside of the attorney-client relationship. *Lawson v. Spirit AeroSystems, Inc.*, 410 F. Supp. 3d 1195, 1209 (D. Kan. 2019). The court in *Lawson* further explained the common interest doctrine as follows:

> To be protected, communications must be made in the course of a "joint effort with respect to a common legal interest" and for the purpose of furthering that effort. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007). Courts have generally required that the nature of the parties' common interest "be identical, not similar, and be legal, not solely commercial." *Teleglobe Commc'ns*, 493 F.3d at 365 (quoting *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974)); *see also Frontier*, 136 F.3d at 705 (relying on a case applying *Duplan*).

410 F. Supp. 3d 1195, 1209 (D. Kan. 2019). Here, Clyde & Co LLP represents an excess insurer of plaintiff's vehicles, which was assessing possible exposure from plaintiff's May 5, 2019 insurance claim. In light of this, Landmark and Clyde and Co LLP shared a common legal interest in Landmark's investigation of the alleged damages, plaintiff's possible concealment of material facts, and possible misrepresentations made by plaintiff. Therefore, the common interest doctrine applies, and the Magistrate Judge's Order requiring these documents to be produced is erroneous.

## IV.  CONCLUSION

WHEREFORE, for the reasons stated above, defendant Landmark American Insurance

---

[5] Specifically, Bates Numbers: L1675 - L1681; L1682 – L1688. [Doc. 58].
[6] Specifically, Bates Numbers: L1531 – L1532; L1575 – L1579; L1580 – L1583; L1584 – L1587; L1588 – L1591; L1592 – L1594; L1655 – L1657; L1693 – L1695; L1696 – L1698; L1658 – L1661; L1662 – L1664; L1665 – L1666; L1667 – L1668; L1669; L1670 – L1674; L1689 – L1692; L1700 – L1703; L1707 – L1708; L1716 – L1717; L1720. [Doc. 58].

Company respectfully requests that the Court sustain its objection and overrule those portions of the August 12, 2020 Order entered by Magistrate Judge Birzer [Doc. 56] that denies Landmark the opportunity to depose a limited number of customers who purchased the vehicles claimed as damaged from plaintiff's alleged May 5, 2019 loss and that requires Landmark to produce documents identified as protected by the work-product doctrine, attorney-client privilege, and common interest doctrine in its amended privilege log.

Respectfully submitted, this 26th day of August, 2020.

*/s/ Jean-Paul Assouad*
Jean-Paul Assouad     KS #20692
Larry D. Fields          KS #15753
KUTAK ROCK LLP
2300 Main Street, Suite 800
Kansas City, MO  64108
(816) 960-0090 (Telephone)
(816) 960-0041 (Facsimile)
Jean-Paul.Assouad@KutakRock.com

And

*/s/ Wayne D. Taylor*
Wayne D. Taylor        *Admitted Pro Hac Vice*
Michelle A. Sherman  *Admitted Pro Hac Vice*
MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, GA 30338
(404) 256-0700 (Telephone)
(404) 250-9355 (Facsimile)
wtaylor@mfllaw.com
msherman@mfllaw.com

**ATTORNEYS FOR DEFENDANT LANDMARK AMERICAN INSURANCE COMPANY**

## **CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that on August 26, 2020, a true and correct copy of the above and foregoing ***Memorandum in Support of Objection Appealing August 12, 2020 Discovery Order*** was filed with the Clerk of the Court for the District Court of Kansas by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

               */s/ Jean-Paul Assouad*
               Attorney for Defendant Landmark American Insurance Company