## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BRANDON STEVEN MOTORS, LLC,

      Plaintiff,

      v.                          Case No. 2:19-CV-02659-JAR-GEB

LANDMARK AMERICAN INSURANCE
COMPANY,

      Defendant.

## MEMORANDUM AND ORDER

Before the Court is Defendant Landmark American Insurance Company's Objection Appealing August 12, 2020 Discovery Order (Doc. 68). Defendant objects to United States Magistrate Judge Gwynne E. Birzer's order (1) prohibiting it from deposing Plaintiff's customers who purchased vehicles subject to the insurance claim at issue in this case; and (2) requiring it to produce certain communications with its counsel and third parties. The objection is fully briefed, and the Court is prepared to rule. As described more fully below, Landmark's objection is overruled.

## I.    Background

Plaintiff Brandon Steven Motors, LLC ("BSM") purchased a commercial property insurance policy from Defendant Landmark American Insurance Company ("Landmark") for Dealers Open Lot Coverage, with a policy period of August 31, 2018 to August 31, 2019. Under that policy, Landmark agreed to pay for damage to covered automobiles caused by wind and/or hail. BSM alleges that on May 5, 2019, one of its car dealerships was hit by a storm, causing damage to hundreds of vehicles on the premises. BSM promptly notified Landmark of its claim under the policy.

Landmark retained Expert Auto Claims as its independent adjuster to assist in the investigation of BSM's claim, including through inspection of the vehicles at issue.  Landmark contends that questions then arose regarding the existence, nature, and amount of damages claimed by BSM—Landmark states that Expert Auto Claims found the damage observed to be inconsistent with typical wind and hail damage.  In early June 2019, Landmark retained counsel and engaged the special investigative unit at G4S Compliance and Investigations ("G4S") to conduct a fraud investigation under counsel's direction.  Before Landmark completed its investigation, BSM filed this lawsuit in October 2019 alleging breach of contract and breach of the duty of good faith and fair dealing.

In the ten months that it has been on file, this case been plagued by discovery disputes requiring the frequent intervention of Judge Birzer.  In addition, this Court issued an Order on June 22, 2020 granting Landmark additional time under Fed. R. Civ. P. 56(d) to conduct discovery before responding to BSM's motion for summary judgment, which BSM filed before serving its initial discovery responses in this action.[1]  The Court will not detail the parties' many discovery disagreements here except as necessary to frame their present dispute.

On August 12, 2020, the parties participated in a discovery hearing before Judge Birzer,[2] after which Judge Birzer issued an Order stating, in part:

> (1) Regarding the various issues discussed during the conference, the parties should conduct discovery in accordance with the Court's rulings as pronounced at the conference, with all documents ordered produced to be exchanged by 8/28/2020; (2) Regarding Bates L001636-1637 and 1640 of Defendant's Amended Privilege Log, the Court, after a re-examination of the privilege log entries, orders those documents be produced by 8/28/2020 as well.[3]

---

[1] Doc. 48.  The Court denied BSM's motion for summary judgment without prejudice. *See id.* at 8.

[2] August 12, 2020 Hrg. Tr., Doc. 60 (under seal).

[3] Doc. 56.

One of the rulings Judge Birzer pronounced during the discovery conference was that Landmark would not be permitted to depose any of BSM's customers who purchased vehicles that BSM claimed were damaged in the May 2019 storm.  Additionally, the documents that Judge Birzer ordered to be produced include certain Landmark communications that she found were not protected by the attorney-client privilege, the work-product doctrine, or the common-interest doctrine.

Landmark timely filed a written objection to Judge Birzer's Order on August 26, 2020. Landmark also filed a motion, pursuant to D. Kan. Rule 72.1.4(d), requesting that Judge Birzer stay its production deadline pending this Court's ruling on the objection, which Judge Birzer granted on September 24, 2020.[4]  Judge Birzer directed that in the event production is ordered, Landmark must produce the documents in question within fourteen days of this Court's decision.

## II.     Standard

Fed. R. Civ. P. 72(a) allows a party to provide specific, written objections to a magistrate judge's non-dispositive order.  The court does not conduct a de novo review, but applies a more deferential standard under which the moving party must show that the magistrate judge's order is "clearly erroneous or contrary to law."[5]  The court must affirm the magistrate judge's order unless the entire evidence leaves it "'with the definite and firm conviction that a mistake has

---

[4] Doc. 80.

[5] Fed. R. Civ. P. 72(a); *see Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 494 (D. Kan. 1997) (citations omitted).

been committed.'"[6] A magistrate judge's order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure."[7]

## III.    Discussion

### A.    Depositions of BSM's Customers

Judge Birzer ruled that Landmark cannot depose BSM's customers regarding their observations of vehicle damage, or discounts they received at the time of sale to account for any damage, because the risk of harm to BSM's business reputation outweighs any potential relevance.  Landmark contends that this ruling is clearly erroneous because the information sought from customers is highly relevant and unavailable from other sources, and because Landmark is willing to limit depositions to "a small sample of customers on a limited number of topics, avoiding any avenues that would result in disparaging plaintiff's business."[8]  Landmark further contends that Judge Birzer's ruling is contrary to law because it does not follow United States Magistrate Judge Angel D. Mitchell's ruling on this issue in the case of *Steven Volkswagen, Inc. v. Zurich American Insurance Co.*[9]  BSM counters that Judge Mitchell's decision in *Steven Volkswagen* is non-binding, that *Steven Volkswagen* is distinguishable, and that based on the facts of this case, Judge Birzer appropriately exercised her discretion in finding that the risk of harm to BSM outweighed any potential relevance of the evidence sought.

---

[6] *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991) (noting that the district court will generally defer to a magistrate judge and overrule only for a clear abuse of discretion).

[7] *Walker v. Bd. of Cty. Comm'rs of Sedgwick Cty.*, No. 09-1316-MLB, 2011 WL 2790203, at *2 (D. Kan. July 13, 2011) (citation omitted).

[8] Doc. 69 at 6.

[9] No. 19-1161-JWB-ADM, 2019 WL 6310186 (D. Kan. Nov. 25, 2019).

The Court cannot find that Judge Birzer's ruling disallowing depositions of BSM customers was clearly erroneous or contrary to law.  BSM is correct that Judge Mitchell's decision in *Steven Volkswagen* is not binding on Judge Birzer or this Court.  District court decisions are not binding precedent,[10] and "it is clear that there is no such thing as 'the law of the district.'"[11]  Thus, Judge Birzer's ruling regarding the risk of prejudice outweighing relevancy with regard to the depositions of BSM customers is not "contrary to law" because another magistrate judge within this District decided to allow such discovery in a different case.

BSM also argues that this matter is different from *Steven Volkswagen* in crucial respects, namely that in *Steven Volkswagen*, the policy holder claimed that it had been undercompensated after the insurer had already paid on the claim, whereas in this case, no money has been paid at all.  BSM states that the damaged vehicles were repaired after Landmark's adjuster personally inspected the damage, that customers would not have observed any damage, and that any discounts at the time of sale are irrelevant for purposes of calculating the amount due under the policy.

Landmark's contention that this is a distinction without a difference is beside the point.  Although the scope of discovery permissible under the Federal Rules of Civil Procedure is broad, it is not unlimited.  Under Fed. R. Civ. P. 26(b)(1),

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, *the parties' relative access to relevant information*, the parties' resources, the

---

[10] *GCIU-Emp'r Ret. Fund v. Coleridge Fine Arts*, No. 14-2303-EFM-GLR, 2018 WL 3637976, at *4 (D. Kan. July 31, 2018); *see also Campbell By and Through Jackson v. Hoffman*, 151 F.R.D. 682, 684 n.1 (D. Kan. 1993) ("While this court is bound to follow the dictates of the Tenth Circuit,  [it is] not required to follow the decisions of other district judges.") (citing *Threadgill v. Armstrong World Indus., Inc*., 928 F.2d 1366, 1371 (3d Cir. 1991))).

[11] *Garcia v. Tyson Foods, Inc*., 534 F.3d 1320, 1329 (10th Cir. 2008) (quoting *Threadgill*, 928 F.2d at 1371).

> importance of the discovery in resolving the issues, and *whether the burden or expense of the proposed discovery outweighs its likely benefit*.[12]

In accordance with these principles, Judge Birzer did not find that the discovery sought was irrelevant, but that its value was significantly outweighed by the risk of prejudice to BSM.  This Court agrees.

Regardless of whether Landmark could limit customer depositions to topics that would not disparage BSM's business, as it claims, permitting such depositions at all would be highly prejudicial to BSM.  Any customer being asked about whether he or she observed damage to a vehicle at the time of purchase, or was informed of prior damage, would feel that BSM had been less than honest, either in that customer's purchase transaction or others.  As Judge Mitchell remarked in *Steven Volkswagen*, the value of allowing an insurer to contact an insured car dealer's customers is "relatively marginal," whereas "[t]he potential harm is obvious on its face. . . .  It is not difficult to imagine that these clients may be left with the impression that the dealership profited from insurance proceeds at their expense, thus damaging [the dealer's] reputation."[13]

Judge Birzer found that the information Landmark seeks is available from other sources—specifically BSM and USA Dent, the company that BSM hired to repair the damaged vehicles—without the risk of harm to BSM's business reputation that would likely result from the depositions of customers.  Further, Judge Birzer noted that customer perception of vehicle damage may or may not be accurate, and that allowing customer depositions could result in disputes about the accuracy of customer recall and the parties trying many cases within a case.

---

[12] Fed. R. Civ. P. 26(b)(1) (emphasis added).

[13] *Steven Volkswagen,* 2019 WL 6310186, at *4−5.

The Court agrees that the burden, expense, and potential prejudice from allowing customer depositions should be avoided in this case, which already presents a new discovery dispute at every turn.  Finally, the Court notes that the burden of being deposed would be significant for innocent, third-party customers.  Although Judge Mitchell ultimately allowed the insurer to contact a handful of customers in *Steven Volkswagen* with certain limitations,[14] the Court here lacks the definite and firm conviction that Judge Birzer's order disallowing depositions of customers in this case is clearly erroneous or contrary to law.  Landmark's objection to Judge Birzer's Order forbidding customer depositions is therefore overruled.

### B.      Production of Landmark Communications

Landmark argues that Judge Birzer erroneously found that certain documents on its amended privilege log are not protected by the attorney-client privilege, the work-product doctrine, or the common-interest doctrine.  These documents include communications between Landmark and its counsel,[15] Landmark and third-party G4S,[16] and Landmark and third-party Clyde & Co. LLP (Clyde & Co.").[17]  As set forth above, G4S is an investigative firm that Landmark hired to conduct a fraud investigation supervised by counsel.  Clyde & Co. LLP ("Clyde & Co.") is a law firm that purportedly represents an excess insurer of BSM's vehicles.

Landmark first contends that its communications with its counsel, G4S, and Clyde & Co. are protected by the attorney-client privilege and the work-product doctrine.  In a case in which

---

[14] *Id*. at *5.  Judge Mitchell allowed the insurer to contact five of the auto dealer's customers.  *Id*.  Here, Landmark stated at the hearing that it would want to depose at least twenty customers—four times as many.

[15] Bates-numbered documents listed at Doc. 69 at 3 n.1.

[16] Bates-numbered documents listed at Doc. 69 at 3 n.2.

[17] Bates-numbered documents listed at Doc. 69 at 3 n.3.

the district court's basis for jurisdiction is diversity of citizenship, "state law supplies the rule of

decision on privilege."[18]   Under Kansas law, the attorney-client privilege applies as follows:

> (1) Where legal advice is sought (2) from a professional legal
> advisor in his capacity as such, (3) the communications made in
> the course of that relationship (4) made in confidence (5) by the
> client (6) are permanently protected (7) from disclosures by the
> client, the legal advisor, or any other witness (8) unless the
> privilege is waived.[19]

"[N]ot every communication between an attorney and client is privileged; only confidential

communications made for the purpose of seeking or giving legal advice are protected."[20]   In

other words, "[t]here must be a connection between 'the subject of the communication and the

rendering of legal advice' . . . . [and] [l]egal advice must predominate for the communication to

protected, i.e., the privilege does not apply where the legal advice is merely incidental to

business advice."[21]

In the insurance context, other courts have recognized that the

> mere retention of counsel does not always give rise to protection of
> the privilege.  For example, where . . . counsel's activities
> "consist[] of conducting interviews of various officers and
> employees for the purpose of determining the factual
> circumstances [of the matter at hand,] . . . the attorneys [are] acting
> more in the role of claims investigators than legal counsel."[22]

---

[18] *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998); *see* Fed. R. Evid. 501.

[19] *Taylor v. LM Ins. Corp.*, No. 19-1030-JWB, 2019 WL 5696861, at *4 (D. Kan. Nov. 4, 2019) (quoting *Rowan v. Sunflower Elec. Power Corp.*, No. 15-cv-9227-JWL-TJJ, 2016 WL 3745680, at *3 (D. Kan. July 13, 2016)).

[20] *Kannaday v. Ball*, 292 F.R.D. 640, 647 (D. Kan. 201) (first citing K.S.A. § 60-426; then citing *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 443 (D. Kan. 2009).

[21] *Taylor*, 2019 WL 5696861, at *5 (quoting *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1269 (D. Kan. 2008)).

[22] *Hurtado v. Passmore & Sons, L.L.C.*, No. 10-cv-00625-MSK-KLM, 2011 WL 2533698, at *5 (D. Colo. June 27, 2011) (alteration in original) (quoting *Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Court for the City and Cty. of Denver*, 718 P.2d 1044, 1049 (Colo. 1986)); *see also Kirkpatrick v. SPX Corp.*, No. 07-CV-0055 J, 2008 WL 11336679, at *2 (D. Wyo. July 21, 2008) (noting that communications between insurer and counsel are not privileged where attorney is "conducting the insurer's business affairs") (citation omitted)).

"A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed."[23]  "The party must bear the burden as to specific questions or documents, not by making a blanket claim."[24]

"Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3) . . . ."[25]  The work-product doctrine

> protects from discovery all documents and materials prepared by an attorney, a party, or an agent of either, in anticipation of litigation.  To establish work product protection, the party seeking to invoke work product immunity must show that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party. The party invoking work product immunity for a document has the burden to establish all the elements of the immunity, and a mere allegation that the work product privilege applies is insufficient to prove applicability.[26]

A determination that the work-product doctrine applies to protect documents from discovery requires two findings.  "The first is the causation requirement—the document in question must have been created because of the anticipation of litigation (i.e. to prepare for litigation or for trial)."[27]  The second is the reasonableness requirement—"the threat of litigation must be 'real' and 'imminent.'"[28]  "In addition, courts look 'to the primary motivating purpose

---

[23] *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999) (citing *Intervenor v. United States (In re Grand Jury Subpoenas)*, 144 F.3d 653, 658 (10th Cir. 1998)).

[24] *Id.* (citing *FDIC v. United Pac. Ins. Co.*, 152 F.3d 1266, 1276 n.6 (10th Cir. 1998)).

[25] *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (quoting *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988)).

[26] *AKH Co., Inc. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 688 (D. Kan. 2014) (quoting *McNabb v. City of Overland Park*, No. 12-2331-CM-TJJ, 2014 WL 1152958, at *8 (D. Kan. Mar. 21, 2014)).

[27] *Kannaday v. Ball*, 292 F.R.D. 640, 648 (D. Kan. 2013) (citing *Marten v. Yellow Freight Sys. Inc.*, No. 96-2013-GTV, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998)).

[28] *Id.* (citing *Marten*, 1998 WL 13244, at *10).

9

behind the creation of the document to determine whether it constitutes work product.  Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work-product doctrine.'"[29]  A claim of work-product protection requires a fact-specific inquiry, and "[t]he party claiming work-product protection . . . 'must demonstrate the document was prepared principally or exclusively to assist in anticipated or ongoing litigation and establish the underlying nexus between the preparation of the document and the specific litigation.'"[30]

In this District, courts

> have observed that applying the work product doctrine to documents prepared by insurance companies during claims investigations is difficult because the nature of the insurance business is such that an insurance company must investigate a claim prior to determining whether to pay its insured, and thus pre-litigation is the routine business of insurance companies.[31]

Thus, "'[f]or insurance investigations, 'whether the insurer and adjuster documents were created in anticipation of litigation depends on whether the party seeking protection can point to a definite shift made by the insurer or adjuster from acting in its ordinary course of business to acting in anticipation of litigation.'"[32]  Further, "if a lawyer is acting in an investigative capacity, and not as a legal counselor, with reference to whether an insurance claim should be paid, then

---

[29] *Id.* (citing *Marten*, 1998 WL 13244, at *10).

[30] *Taylor v. LM Ins. Corp.*, No. 19-1030-JWB, 2019 WL 5696861, at *3 (D. Kan. Nov. 4, 2019) (quoting *Kannaday*, 292 F.R.D. at 649).

[31] *Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.*, No. 09-2656-KHV, 2010 WL 3880027, at *6 (D. Kan. Sept. 28, 2010) (citing *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 659 (D. Kan. 2007)).

[32] *Taylor*, 2019 WL 5696861, at *3 (quoting *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 297 F.R.D. 611, 618−19 (D. Kan. 2014)) (citing *AKH Co., Inc. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 688−89 (D. Kan. 2014)).

neither the [attorney-client] privilege . . . nor the work product privilege protects communications from a lawyer to an insurance carrier."[33]

In fact, "[c]ourts have routinely applied a rebuttable presumption 'that neither attorney work product nor attorney-client privilege protects an insurer's investigatory file on an insured's claim from discovery *before a final decision is made' as to that claim*."[34]  To overcome this presumption, "the insurer must demonstrate, by specific evidentiary proof of objective facts, that a reasonable anticipation of litigation existed when the document was produced, and that the document was prepared and used solely to prepare for that litigation, and not to arrive at a (or buttress a tentative) claim decision."[35]

In this case, the storm at BSM's dealership occurred on May 5, 2019.  Landmark argues that soon afterward, its investigation "shifted from an ordinary claims investigation to one in anticipation of litigation when Landmark obtained information from Expert Auto's adjusters regarding inconsistent, questionable, and possibly manmade damages it observed during its inspections of plaintiff's vehicles, and consequently, suspected that plaintiff may have misrepresented the amount of its claim."[36]  Landmark retained counsel on June 5, 2019, and maintains that from that point on, communications with its attorneys, the G4S investigative unit

---

[33] *Church Mut. Ins. Co. v. Coutu*, No. 17-cv-00209-RM-NYW, 2018 WL 2388555, at *4 (D. Colo. May 25, 2018) (citations omitted).

[34] *AKH Co.,* 300 F.R.D. at 688 (emphasis added) (quoting *Lindley v. Life Inv'rs Ins. Co. of Am.*, 267 F.R.D. 382, 399 (N.D. Okla. 2010)); *see also Pearson v. Progressive Direct Ins. Co.*, No. 10-130 JC/LFG, 2010 WL 11623369, at *9−10 (D.N.M. June 28, 2010) (collecting cases); *Stillwell v. Executive Fund Life Ins. Co.*, No. 89-A-245, 1989 WL 78159, at *5 (D. Colo. July 12, 1989) ("The time-worn claims of work product and attorney-client privilege cannot be invoked to the insurance company's benefit where the only issue in the case is whether the company breached its duty of good faith in processing the insured's claim.") (quoting *Silva v. Fire Ins. Exch.*, 112 F.R.D. 699, 699−700 (D. Mont. 1986))).

[35] *AKH Co.*, 300 F.R.D. at 689 (quoting *Lindley*, 267 F.R.D. at 399).

[36] Doc. 69 at 9.

supervised by its counsel, and Clyde & Co., a law firm representing an excess insurer of BSM's vehicles, are protected by both the attorney-client privilege and the work-product doctrine.

However, counsel for Landmark expressly stated on the record at the August 12 discovery hearing that Landmark had not yet made a final decision on BSM's claim at the time that BSM filed suit on October 25, 2019.  Thus, Landmark is required to overcome the presumption that documents dated before that time were prepared in the ordinary course of business and not in anticipation of litigation.  At the discovery hearing, Judge Birzer painstakingly went through the disputed documents and heard argument from the parties as to whether Landmark had made a sufficient showing in its amended privilege log to rebut the presumption.  While Judge Birzer found some documents protected by the attorney-client privilege, she found no privilege applicable to others.  Specifically, Judge Birzer found that Landmark had failed to demonstrate by specific evidentiary proof of objective facts that certain documents in question were prepared solely in anticipation of litigation and not to make a claims decision.  She found that Landmark's assertion of attorney-client privilege and work-product protection as to those documents was based on conclusory allegations of fraud or misrepresentation and supported by insufficiently descriptive privilege log entries.

Having reviewed those privilege log entries, the Court cannot find that Judge Birzer's ruling was clearly erroneous or contrary to law.  Most of the document descriptions at issue are very general and/or expressly state that they pertain to the "investigation" of BSM's claim.[37] Judge Birzer found that Landmark failed to demonstrate that the documents in question were prepared solely for and after a definite shift toward anticipation of real and imminent litigation,

---

[37] *See, e.g.*, Doc. 79-1 at 10 ("Claim note re: communications with counsel about further investigation of BSM's claim"); *id*. at 46 ("E-mail with counsel re: ROR letter to BSM and request for legal advice pertaining to additional investigation in light of coverage concerns"); *id*. at 57 ("E-mail with counsel re: further investigation of BSM's claim in light of coverage concerns.").

and that Landmark's counsel was providing legal advice as opposed to assistance with the claim investigation.  Given that Landmark concedes that it had not yet made a coverage decision at the time these documents were created, shielding them from discovery because Landmark chose to have its attorney function as an investigator would be unfairly prejudicial to BSM's ability to prove its bad-faith claim.  Once again, the Court lacks a firm conviction that Judge Birzer erred in finding that Landmark failed to prove the application of the attorney-client privilege and/or the work-product doctrine.

Finally, Landmark argues that its communications with Clyde & Co. are also protected by the common-interest doctrine.  "The common-interest doctrine is an exception to waiver that may protect information and documents shared outside of the attorney-client relationship."[38] "To be protected, communications must be made in the course of a 'joint effort with respect to a common legal interest' and for the purpose of furthering that effort.'"[39]  "Courts have generally required that the nature of the parties' common interest be 'be identical, not similar, and be legal, not solely commercial.'"[40]

After reciting the foregoing standards regarding the contours of the common-interest doctrine, Landmark rather summarily argues that

> Clyde & Co. LLP represents an excess insurer of plaintiff's vehicles, which was assessing possible exposure from plaintiff's May 5, 2019 insurance claim.  In light of this, Landmark and Clyde and Co LLP [sic] shared a common legal interest in Landmark's investigation of the alleged damages, plaintiff's possible concealment of material facts and possible misrepresentations made by plaintiff.[41]

---

[38] *Lawson v. Spirit AeroSystems, Inc.*, 410 F. Supp. 3d 1195, 1209 (D. Kan. 2019) (first citing *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 362−66 (3d Cir. 2007); then citing *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1195 (10th Cir. 2006)).

[39] *Id.* (quoting *United States v. BDO Seidman*, LLP, 492 F.3d 806, 815−16 (7th Cir. 2007)).

[40] *Id.* (citations omitted).

[41] Doc. 69 at 11.

BSM counters that Landmark has not even provided evidence of Clyde & Co.'s representation of an excess carrier, let alone met the standard requiring an identical legal interest. BSM also contends that the insurance claim at issue in this case does not reach excess coverage. Landmark does not refute this argument except to say that it is "possible" that the excess insurer might have become involved if the damage claim exceeded the limits of the Landmark policy. Further, BSM points out that Landmark's counsel admitted at the August 12 discovery hearing that some of Landmark's communications with Clyde & Co. related to the excess insurer's involvement in a different case involving BSM, another point which Landmark does not address here.

Judge Birzer stated that based on Landmark's amended privilege log, she could not even determine whether Landmark's communications with Clyde & Co. were protected by attorney-client privilege in the first place, let alone whether they would meet the requirement of a common legal interest to avoid waiver of the privilege through Landmark's communication with attorneys other than its own. Thus, Judge Birzer found that Landmark had failed to demonstrate the application of the common-interest doctrine. Based on the record before it, this Court has no reason to find otherwise or that Judge Birzer abused her discretion in so holding.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Landmark's Objection Appealing August 12, 2020 Discovery Order (Doc. 68) is **overruled**. Landmark shall produce the documents in question within fourteen (14) days of this Order.

**IT IS SO ORDERED.**

Dated: October 5, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE