## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BRANDON STEVEN MOTORS, LLC,

        Plaintiff,

v.

                                Case No. 2:19-CV-02659-HLT-GEB

LANDMARK    AMERICAN    INSURANCE
COMPANY,

        Defendant.

## LANDMARK AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND  INCORPORATED SUPPORTING MEMORANDUM OF LAW

Defendant Landmark American Insurance Company ("Landmark") files this motion for summary judgment and  incorporated supporting memorandum of law, respectfully showing the Court as follows:

## INTRODUCTION

This Court stated that "this breach-of-contract case centers on whether payment is owed to an insured [plaintiff Brandon Steven Motors, LLC ("BSM")] under an insurance policy [issued by Landmark]." (Memorandum and Order [Doc. 203, p. 1]). The relevant portion of the Landmark policy's payment of loss provision states that Landmark may ask the insured to replace or repair the damaged property and Landmark will pay "only the actual cost to the insured." (Landmark policy, IX Claims Reporting and Adjustment, 4. Payment of Loss. [Doc. 1-1 at 20]).

When a storm on May 5, 2019 damaged BSM's vehicles, BSM retained USA Dent, Inc. to repair the damage. "USA Dent ultimately did repair all the vehicles damaged by the storm." (Memorandum and Order, p. 5). "BSM and USA Dent agreed that USA Dent's compensation would be a percentage (between 40-60%) of any amount paid by Landmark to BSM and would

not be the actual cost of the repairs." (*Id.,* p. 4). Now, "BSM … argues that … it is entitled to recover $2,300,949.19 … which represents the estimated cost of repair." (*Id.,* p. 8). When Landmark failed to pay BSM the amount of the Expert Auto repair estimate, BSM filed suit for breach of contract.

## STATEMENT OF THEORIES OF RECOVERY

Landmark is entitled to summary judgment on Count I of BSM's first amended complaint alleging breach of contract. The language in the Landmark policy's payment of loss provision - "only the actual cost to the insured" - is plain and unambiguous. Landmark did not have a contractual obligation to pay BSM the amount of Expert's Auto's repair estimate. Therefore, Landmark did not breach the insurance contract by failing to pay that amount.

Landmark did not breach the insurance contract for the additional, separate reason that the Landmark policy provides "[t]he loss shall not become payable unless, as a condition precedent to [Landmark's] liability, there shall have been full compliance with all the terms and conditions of this policy…." (Landmark policy, IX Claims Reporting and Adjustment, 4. Payment of Loss. [Doc. 1-1]). Those terms and conditions required BSM to provide information in proof of its loss as well as other documents and information requested by Landmark. (*Id.*). Conditions precedent to a party's performance under a contract are enforceable in Kansas to relieve that party – Landmark - of its obligation to perform when the conditions precedent have not been met. BSM's actions and inactions prevented the conditions precedent from occurring. Therefore, BSM cannot enforce the insurance contract against Landmark.

Further, the party seeking to enforce a contract must show that it performed or was willing to perform its obligations under the contract. Before suit was filed (and to date), BSM refused to provide information requested by Landmark regarding the actual damages to the vehicles, USA

2

Dent's repairs, and the actual cost to BSM of the repairs. The insurance contract required BSM to provide this information when requested by Landmark. As a result of BSM's failure and refusal to perform its contractual obligations, the insurance contract is not enforceable against Landmark.

In addition, BSM cannot prove the amount of damages it suffered (if any) as a result of Landmark's alleged breach. BSM's recovery is set under the Landmark policy to BSM's actual cost of repairs to the vehicles only. However, BSM has no evidence of the actual cost of the repairs to the damaged vehicles. Because BSM cannot prove its damages, it cannot recover against Landmark for breach of contract.

Landmark is entitled to summary judgment on Count II of BSM's complaint alleging breach of a duty of good faith and fair dealing in investigating and handling BSM's claim. Landmark has acted at all times in good faith and in accordance with the terms of the Landmark policy and pursuant to all other obligations owed to BSM.

Landmark is entitled to summary judgment on BSM's claim for attorney's fees. Landmark had just cause to refuse to pay BSM's demand for the amount of the Expert Auto cost of repair estimate. Landmark justifiably insisted upon paying "only the actual cost to [BSM] of repairs," and only after BSM provided documentation that proved the cost to repair each vehicle and the actual cost incurred by BSM, which information BSM never provided.

## SUPPORTING MEMORANDUM OF LAW

### Statement of Undisputed Facts

1.     When a storm on May 5, 2019 damaged vehicles on one of BSM's lots, BSM did not make any notes or take any photos of the damage to the vehicles. [Doc. 179-1 at 95:5-23].

2.     Instead, on the day after the storm, BSM contracted with a third party, USA Dent Company, LLC ("USA Dent"), to evaluate the damage, assist with the preparation of BSM's

insurance claim, and repair the damaged vehicles. (Memorandum and Order, p. 4 [Doc. 203]; EUO of Tim Bishop [Doc. 171-18 at 23:12-15]; Depo. Brandon Steven [Doc. 179-16 at 33:7-11; 40:18-23; 44:13-45:8]; Feb. 11, 2021 Depo. Tim Bishop [Doc. 179-1 at 99:19-24].

3.      USA Dent's compensation for its services for BSM was to be a percentage (between 40-60%) of any amount paid by Landmark to BSM and would not be the actual cost to repair the vehicles. (Memorandum and Order, p. 4. See also, EUO Tim Bishop [Doc 179-15 at 23:12-15]; Depo. Brandon Steven [Doc. 179-16 at 33:7-11; 40:18-23; 44:13-45:8]).

4.      USA Dent did not provide BSM with any documentation that reflected the damage to the vehicles or what it would cost to repair the damage to each vehicle. (Depo. Brandon Steven [Doc. 179-16 at 39:19-25]; Depo. Tim Bishop [Doc. 179-1 at 49:12-15; 233:16-21]).

5.      USA Dent repaired all of the vehicles damaged in the storm but did not document the actual repairs it performed on each vehicle. (Memorandum and Order, p. 5; see also Depo. Dennis Sanders [Doc. 179-17 at 92-17:25]; Depo. Tim Bishop [Doc. 179-1 at 47:18-21]).

6.      Landmark wrote to BSM requesting "invoice, receipts, proposals, estimates or other documents reflecting any actual repairs." (Memorandum and Order, p. 7; see also [Doc. 27-3, p. 4] requesting a list of each vehicle damaged by wind and/or hail on May 5, 2019; all estimates, proposals, quotes, scopes of repair, assessments or similar documentation of the damages; and all invoices receipts, proposals, estimates or other documents reflecting any actual repairs of the damage to the vehicles).

7.      Landmark's written request also asked for deal jackets and damage disclosure forms. [Doc. 27-3, p. 4]. The Magistrate Judge in this case found the deal jackets "should contain information regarding the sales price, purchase price, any repairs made to the vehicle while it was in BSM's possession and the cost of those repairs, and any disclosures about the vehicle's damage

history at the time of sale and any corresponding purchaser discounts." [Doc. 48, p. 6 of 9]; see also EUO of Tim Bishop [Doc. 179-15 at 37:14-38:4])[1].

8.      BSM, instead of producing the documents requested by Landmark, had its legal counsel send a letter to Landmark's legal counsel insisting that Landmark use the Expert Auto spreadsheet (estimate of the cost of repair) to evaluate and pay BSM's claim. [Doc. 27-4]. BSM's counsel threatened suit if Landmark refused. (*Id.*).

9.      Landmark's counsel wrote another letter dated October 18, 2019 stating that BSM's representative Tim Bishop in his examination under oath promised to provide copies of the USA Dent invoices for actual repairs to the vehicles, but BSM's counsel subsequently claimed the repair invoices do not exist. [Doc. 179-11]. The letter stated:

> Landmark requests clarification regarding the basis upon which USA Dent is or will be compensated by BSM for the repairs completed on the vehicles claimed as damaged and any documentation that reflects repairs to the vehicles actually performed by USA Dent to date. Certainly Landmark is entitled to verify the scope and cost of the actual repair work performed.

(*Id.,* p. 2).

10.     Tim Bishop admitted that BSM failed to provide this requested information after receiving the October 18, 2019 letter from Landmark's counsel or before filing suit. (Depo. Bishop [Doc. 179-1 at 166:18-168:16; 175:2-7]).

11.     BSM did not produce any invoices for the work performed by USA Dent to repair the vehicles. (Memorandum and Order, p. 7; Depo. Bishop [Doc. 179-1 at 166:18-168:16]).

12.     BSM does not have any record of the actual repairs that USA Dent performed on the vehicles. (Memorandum and Order, p. 5); Depo. Bishop [Doc. 179-1 at 34:20-23; 47:15-21]).

---

[1] Page 38 of the EUO of Tim Bishop inadvertently was omitted when Landmark filed ECF document 179. That page is attached to this motion as Exhibit 1.

13.     No documentation exists of the scope of the work to be performed, or actually performed, on the damaged vehicles by USA Dent. (Depo. Bishop [Doc. 179-1 at 34:20-23; 141:16-23]; Depo. Dennis Sanders [Doc. 179-17 at 104:14-25]).

14.     USA Dent's independent contractors did not describe the work they did on each vehicle. The tech sheets provided by the independent contractors merely said which vehicle they worked on. (Depo. Dennis Sanders [Doc. 179-17 at 105:1-14]).

15.     BSM does not have any invoices for the work performed by USA Dent because its agreement with USA Dent did not call for invoices. (Memorandum and Order, p. 7; see also Depo. Bishop [Doc. 179-1 at 155:23-156:5; 162:3-19]).

16.     The Landmark policy requires the insured, BSM, to provide a proof of loss including "the amount of loss or damage thereto." [Doc. 1-1, at 19].

17.     The Landmark policy's proof of loss provision states in part that "[a]s often as required, the Insured shall produce for examination all books of accounts. [sic] bills, invoices and other vouchers or certified copies thereof, if the originals are lost, at such reasonable place as may be designated by the Company…." [Doc. 1-1 at 19].

18.     The Landmark policy's Common Policy Conditions states that "We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward." (Landmark policy, Common Policy Conditions, C. Examination of Your Books and Records; [Doc. 1-1 at 38]).

19.     The Landmark policy's payment of loss provision further states that "[t]he loss shall not become payable unless, as a condition precedent to liability, there shall have been full compliance with all the terms and conditions of this policy…." [Doc. 1-1 at 20].

20.     The Landmark policy's payment of loss provision states in part that "[t]he Company at it's [sic] sole option may pay for the loss in money or may repair or replace the damaged or stolen unit or part thereof but if requested by the Company, the Insured shall replace such unit or part thereof or furnish the labor and materials necessary for repairs thereto and the Company shall pay only the actual cost to the insured." [Doc. 1-1 at 20].

21.     Dan Durbin testified regarding the prejudice to Landmark caused by BSM's failure to provide the information and documentation Landmark requested:

Q.     So, what is Landmark's contention as to in what ways it was unable to complete its investigation?

A.     What comes to mind is that we never received the supporting documents that we requested prior to the suit being filed. We asked for the actual repair costs and never got them, even to this day.

(Depo. Dan Durbin [Doc. 179-2 at 144:20-145:2]).

22.     Durbin explained the prejudice suffered by Landmark as a result of BSM's refusal to provide any documentation relating to the actual repairs performed on the vehicles and the actual cost of those repairs to each vehicle incurred by BSM, which is all that Landmark owes BSM under the Landmark policy. Durbin testified:  "…That's the basis of our loss settlement and payment to the insured based on cars that are all repairable damage, not total losses."  (Depo. Dan Durbin [Doc. 179-2 at 144:7-10]).

## Argument and Citation of Authority

### A.     Standard on Motion for Summary Judgment

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "For the purpose of reviewing a summary judgment motion, a factual dispute is 'material' only if it 'might affect the

outcome of the suit under the governing law.' A 'genuine' issue of fact exists where 'there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.'" *Dig. Ally, Inc. v. Z3 Tech., LLC,* 2010 U.S. Dist. LEXIS 103715 at *2 (D. Kan. Sep. 30, 2010) (Internal citations omitted).

A party that does not bear the burden of proof at trial – Landmark - may obtain summary judgment if it shows "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *Cessna Aircraft Co. v. Hartford Accident & Indem. Co.,* 900 F. Supp. 1489, 1496 (D. Kan. 1995).

### B.      Elements of a Breach of Contract Claim

"Under Kansas law, a breach-of-contract claim requires a showing of the following elements: '(1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff was damaged by the breach.'" *Hall-Lopez v. State Farm Mut. Auto. Ins. Co.,* 2021 U.S. Dist. LEXIS 152512 at *8 (D. Kan. Aug. 13, 2021)(*quoting Ice Corp. v. Hamilton Sundstrand Inc.,* 444 F. Supp. 2d 1165, 1169 (D. Kan. 2006)).

### C.      The Landmark Policy Does Not Provide Coverage for Estimated Repair Costs When, as Here, Repairs Actually Were Made

In a claim for breach of an insurance contract, the insured bears the burden of showing the existence of the contract and the terms of coverage under the contract. *See State Auto Prop. & Cas. Ins. Co. v. Ward Kraft,* 434 F. Supp. 3d 1003, 1007 (D. Kan. 2020) ("[T[he insured bears the burden to show coverage under the policy…."); *accord United States Fire Ins. Co. v. Bunge N. Am., Inc.,* 2008 U.S. Dist. LEXIS 59737 at *16 (D. Kan. Aug. 4, 2008). BSM therefore bears the burden of proving that the terms and conditions of the Landmark policy required Landmark to pay

BSM the amount of Expert Auto's cost of repair estimate. BSM alleges Landmark breached the insurance contract when it failed to pay this amount.

Interpretation of an insurance policy is solely a question of law for the Court. *See **Karlin v. Paul Revere Life Ins. Co.,*** 742 F. Supp. 2d 1253, 1262 (D. Kan. 2010). The court also held:

> If the language in an insurance policy is clear and unambiguous, it must be construed in its plain, ordinary and popular sense and according to the sense and meaning of the terms used. An insurance policy is ambiguous when it contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language. An ambiguity does not exist merely because the parties disagree on the interpretation of the language.

*Id.* "Courts should not strain to find an ambiguity when common sense shows there is none." *Id.* at 1262. When the terms of an insurance policy are unambiguous, the court will not consider parol evidence on the meaning of those terms. *Id.* at 1263. Courts should "consider the policy as a whole, rather than viewing provisions in isolation." ***BancInsure, Inc. v. F.D.I.C.,*** 796 F.3d 1226, 1233 (10th Cir. 2015).

In the absence of specific language in an insurance contract, an insurer has no obligation to pay the insured more than its actual loss. *See **Graves v. Am. Family Mut. Ins. Co.,*** 686 F. App'x 536, 539 (10th Cir. 2017) (Insurance law is based on the principle of indemnity, which requires that an insured be made whole, putting it in the same condition as before the damage occurred). An insured is not permitted to profit or receive a windfall from its loss.

The Landmark policy's payment of loss provision is not ambiguous. Its meaning is not doubtful or conflicting. It states in pertinent part as follows:

> 4.      PAYMENT OF LOSS. The Company at it's (sic) sole option may pay for the loss in money[2] or may repair or replace the damaged or stolen unit or part thereof but if

---

[2] This Court asked about the meaning of the words "pay for the loss in money." (Memorandum and Order, p. 10, n. 4). This payment method applies when the insurer does not elect to replace or repair the damaged property or request that the insured do so. *See **Rawlins v. Esurance Prop. & Cas. Ins. Co.,*** 2022 U.S. Dist. LEXIS 14061 (E.D. Mo. Jan. 26, 2022), where the policy stated that the insurer may elect to "pay for the

requested by the Company, the Insured shall replace such unit or part thereof or furnish the labor and materials necessary for repairs thereto and <u>the Company shall pay only the actual cost to the insured</u>. …

(Emphasis added). BSM has the burden of proving that this payment of loss provision required Landmark to pay the amount of the Expert Auto cost of repair estimate even though Landmark knew BSM actually had repaired the vehicles. BSM's burden coincides with its burden as a plaintiff to prove that Landmark breached the insurance contract by not paying BSM the amount of the Expert Auto cost of repair estimate.

BSM cannot meet its burden of proof. Nothing in the Landmark policy's payment of loss provision (or any policy provision) requires Landmark to pay an estimate of repair costs when repairs actually were made. This Court already has ruled that BSM "has not pointed to any applicable policy language that demonstrates it is entitled to the spreadsheet total" [the Expert Auto estimate]. (Memorandum and Order, pp. 15-16). BSM has not produced any evidence or authority that should persuade this Court to change its prior ruling on this issue.

In ***Walton Motor Co. v. Am. Hardware Mut. Ins. Co.,*** 167 F. Supp. 441 (D. Wyo. 1958), the court construed similar language in the payment of loss provision in an automobile dealer's open policy, which stated as follows: "Replacements and Repairs at Actual Cost. In the event of loss, the Insured shall, if requested by the Company, replace the property lost, or furnish the labor and materials necessary for repairs thereto, at actual cost to the Insured." ***Id.*** at 442. The insured repaired the damages in its body shop and contended the coverage afforded by the policy was its cost of repairs at retail. The insurer asserted that its liability was limited by excluding from the repair costs lost profit or overhead. ***Id.*** (Neither party apparently argued as BSM does here that an insured that has repaired its damaged vehicles is entitled to recover from its insurer a pre-repair

---

'loss' in money or repair or replace the damaged or stolen property." ***Id.*** at *8. The court held that "Esurance elected not to repair or replace Plaintiff's vehicle, and instead it paid for the loss in money." ***Id.***

estimate of the costs of repair). The court in **Walton** held that "the plaintiff is entitled to recover the sum of $8,805.64, said amount representing the actual cost to the plaintiff for labor and materials necessary for the repair of said vehicles." **Id.** at 444. Although the court in **Walton** did not decide the issue that is before this Court, the decision shows that both parties and the court interpreted similar insurance policy language to require the insurer to pay only the actual costs incurred by the insured to repair its vehicles.

In light of the above, this Court should find as a matter of law that the Landmark policy did not require Landmark to pay BSM's demand for the amount of Expert Auto's cost of repair estimate. Instead, Landmark was required to pay "only the actual cost to [BSM]." Landmark therefore did not breach the contract by not paying BSM the amount of Expert Auto's estimate.

> ### D.   BSM May Not Enforce the Insurance Contract Against Landmark Due to the Non-occurrence of Conditions Precedent to Landmark's Obligation to Perform

"A condition precedent is something that is agreed must happen or be performed before a right can occur to enforce the main contract." **Stephenson v. Young,** 2011 U.S. Dist. LEXIS 57579 at *9 (D. Kan. May 26, 2011) (*citing* **Weinzirl v. Wells Group, Inc.,** 234 Kan. 1016, 1020 (1984)). "As a general rule, a proof of loss requirement [in an insurance policy] is valid and may be considered as a condition precedent to recovery." **Conn. Fire Ins. Co. v. Fox,** 361 F.2d 1, 6 (10th Cir. 1966). Similarly, "[t]he duty of cooperation is typically a condition precedent to any action by the insured against the insurer, meaning if it is not performed 'the contract between the parties cannot be enforced.'" **Auto-Owners Mut. Ins. Co. v. Bricks & Stones,** LLC., 2021 U.S. Dist. LEXIS 107784 at *14 (D. Kan. June 9, 2021)(citation omitted).

The Landmark policy's payment of loss provision contains a condition precedent to Landmark's obligation to pay for a covered loss. It states that "[t]he loss shall not become payable

unless, as a condition precedent to [Landmark's] liability, there shall have been full compliance with all the terms and conditions of this policy…." (SOF No. 19). The terms and conditions of the Landmark policy required BSM to perform the following:

> Within sixty (60) days after loss or damage, unless such time [i]s extended [i]n writing by the Company, the Insured shall forward the Company a statement, signed and sworn to by the insured, stating the place, time and cause of the loss or damage, the interest of the Insured and of all others in the property, the sound value thereof and <u>the amount of loss or damage thereto</u>, all encumbrances thereon and all insurance, whether valid and collectible or not, covering the said property. …

(SOF No. 16).

BSM failed to comply with Landmark's request for proof of "the amount of loss or damage" to its vehicles. Specifically, BSM did not provide the information requested by Landmark regarding the number of vehicles damaged by the storm, the nature and extent of the damage to each vehicle, or the nature and cost of the repairs to each vehicle actually made by USA Dent. (See Landmark's SOF Nos. 6-7, 9-11). Indeed, when Landmark requested this information, BSM berated Landmark for requesting it and threatened suit. (Landmark's SOF No. 8).

The terms and conditions of the Landmark policy further required BSM to do the following as a condition precedent to Landmark's obligation to perform:

> As often as required, the Insured shall produce for examination all books of accounts. (sic) <u>bills, invoices and other vouchers or certified copies thereof, if the originals are lost</u>, at such reasonable place as may be designated by the Company and shall, permit extracts and copies thereof to be made

(SOF No. 17) (Emphasis added). BSM refused Landmark's legitimate request to provide a list of each vehicle damaged by wind and/or hail on May 5, 2019; all estimates, proposals, quotes, scopes of repair, assessments or similar documentation of the damages; and all invoices receipts, proposals, estimates or other documents reflecting any actual repairs of the damage to the vehicles.

(SOF No. 6). BSM provided none of this information and now states that the information does not exist. (SOF Nos. 10-14).

The Landmark policy also stated that "[w]e may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward." (SOF No. 18). Before filing suit, BSM refused to produce the deal jackets requested by Landmark, which were expected to contain evidence of damage to the vehicles, the repairs made, and the actual cost of the repairs. (Landmark's SOF Nos. 7-8). When the Court finally ordered BSM to produce the deal jackets, only a few of them contained any repair information.

Based upon the above undisputed facts, BSM's claim for breach of contract fails as a matter of law. When BSM filed its complaint, BSM was in breach of its own contractual obligations, the performance of which were a pre-requisite to Landmark's obligation to perform. It is well-settled in Kansas law that a plaintiff's claim must be ripe at the time it files suit. Events happening after suit is filed cannot provide the missing elements of a cause of action. In ***Miner v. Farm Bureau Mut. Ins. Co.,*** 17 Kan. App. 2d 598 (1992), the court held:

> A cause of action must exist and be complete before an action can be commenced; suits commenced before the cause of action stated in the pleadings arises will generally be dismissed when proper objection is taken; if a plaintiff has no valid and subsisting title or right to the subject of his action at the time of its commencement, he may not by the subsequent acquisition or perfection of such right or title remedy the defect so as to succeed in the action. The subsequent occurrence of the conditions or facts necessary to make the cause of action complete will not avail the plaintiff in maintaining his suit. The rights and liabilities of the parties -- that is, their rights to an action or to judgment or relief -- depend upon the facts as they existed at the time of the commencement of the action, and not at the time of trial. And it has been said that the nonexistence  of a cause of action when the suit was begun cannot be cured by an amendment to the complaint or declaration to cover the subsequently accruing right.

***Id.*** at 605-06 (*citing* 1 Am. Jur. 2d, Actions § 87, p. 616). BSM providing the information requested by Landmark specifically was made a condition precedent to Landmark's liability under the policy.

Because this condition precedent did not occur (due to the BSM's own actions and inactions), BSM has no right to enforce the insurance contract against Landmark. For this reason, Landmark is entitled to summary judgment on Count I of plaintiff's amended complaint.

**E.    BSM Cannot Enforce the Insurance Contract Against Landmark Because BSM Failed to Perform Its Contractual Obligations And This Failure Prejudiced Landmark**

The plaintiff in a breach of contract case must prove as an essential element of its claim its own performance or willingness to perform in compliance with the contract. *See Hall-Lopez,* 2021 U.S. Dist. LEXIS 152512 at *8. When the contract is one of insurance, the insured's obligation to perform under the contract includes cooperating with the insurer's investigation. *Id.* An insured's failure to cooperate, which prejudices the insurer, precludes the insured from recovering under the contract. *Id.* The court in *Hall-Lopez* explained:

> Insurance contracts often impose post-loss "duties of cooperation" on insured parties. *Geer v. Eby,* 309 Kan. 182, 432 P.3d 1001, 1010 (Kan. 2019). These duties "stem[] from the insurer's information disadvantage." *Id.* In Kansas, "an insurer is relieved from liability under an insurance contract only if a breach of the cooperation clause causes substantial prejudice to the insurer's ability to defend itself." *Youell v. Grimes,* 217 F. Supp. 2d 1167, 1174 (D. Kan. 2002); see also *Boone v. Lowry,* 8 Kan. App. 2d 293, 657 P.2d 64, 70 (Kan. Ct. App. 1983).

*Id.* In *Erickson v. State Farm Mut. Auto. Ins. Co.,* 2020 U.S. Dist. LEXIS 56547 at *9 (D. Kan. Feb. 28, 2020), the court held that "[a]lthough whether an insurer has been prejudiced generally presents a question of fact, where the relevant facts are not in dispute it may be determined as a matter of law." The court in *Hall-Lopez* discussed the circumstance in which an insured's failure to cooperate may be deemed prejudicial to the insurer as a matter of law:

> Where an insured's failure to cooperate prevents an insurance company from determining the extent and cause of injuries, prejudice may be found. See *Goddard,* 992 F. Supp. 2d at 479. Further, "[i]f the insured's refusal to cooperate prevents the insurer from completing such a reasonable investigation, prejudice should be found to exist." *Walker v. State Farm Fire & Cas. Co.,* 2017 U.S. Dist. LEXIS 85284, 2017 WL 1386341, at *4 (D. Colo. 2017) (quoting 1 Allan D. Windt, Insurance

Claims & Disputes § 3.2 (6th ed. 2016)); see also ***Bryant v. Sagamore Ins. Co.,*** 597 F. App'x 968, 973-74 (10th Cir. 2015) ("Because Kelly's policy excluded coverage for non-permissive use, Sagamore demonstrated that it was prejudiced, at a minimum, by its inability to investigate this issue."); ***Cribari v. Allstate Fire & Cas. Ins. Co.,*** 861 Fed. Appx. 693, 2021 U.S. App. LEXIS 16587, 2021 WL 2255008, at *6 (10th Cir. 2021) ("Often, the prejudice from a failure to cooperate manifests in the insurer's failure to complete an investigation."). If it is undisputed that an insured party failed to provide requested records and those records are relevant to the insurer's investigation, prejudice may be found. See ***Walker,*** 2017 U.S. Dist. LEXIS 85284, 2017 WL 1386341, at *4.

2021 U.S. Dist. LEXIS 152512 at *13-14.

Here, BSM failed to provide any evidence of the actual damages to its vehicles, the repairs actually performed on the vehicles, and the actual cost to BSM of those repairs. BSM's failure to perform its contractual obligations prejudiced Landmark by preventing it from completing its investigation into the extent and cause of the damages to the vehicles and the amount owed by Landmark to BSM. Landmark's representative Dan Durbin testified regarding the prejudice to Landmark:

> Q.   So, what is Landmark's contention as to in what ways it was unable to complete its investigation?
>
> A.   What comes to mind is that we never received the supporting documents that we requested prior to the suit being filed. We asked for the actual repair costs and never got them, even to this day.

(SOF No. 21). Durbin explained the prejudice suffered by Landmark as a result of BSM's refusal to provide documentation of the actual repairs performed on the vehicles and the actual cost to BSM of those repairs to each vehicle, which is all that Landmark owes BSM under the Landmark policy. Durbin testified: "…That's the basis of our loss settlement and payment to the insured based on cars that are all repairable damage, not total losses." (SOF No. 22).

BSM was required to provide the information requested by Landmark <u>before</u> filing suit for alleged breach of contract. The court in ***Hall-Lopez*** explained:

To the extent Plaintiff contends that Defendant was not prejudiced because it was able to eventually get the authorizations and other information in the course of litigation, this ignores the fact that Plaintiff agreed to cooperate before she filed a lawsuit, and in failing to do so, prevented Defendant from avoiding litigation altogether. If an insured could simply ignore her duties under an insurance policy, proceed straight to court, and then alleviate any prejudice through compliance with the otherwise obligatory rules of civil procedure, it would render much of an insured's obligations under a policy inconsequential.

2021 U.S. Dist. LEXIS 152512 at *15.

Not only did BSM fail and refuse to provide before filing suit any of the information requested by Landmark, BSM still has not provided the requested information concerning the repairs actually made and the cost to repair each vehicle, which information BSM now claims does not exist. (BSM would have everyone believe the incredible story that it allowed USA Dent to perform repairs to hundreds of BSM's vehicles at an estimated total cost to repair exceeding $2 million without requiring USA Dent to produce a single piece of paper documenting any of the repairs actually made). Landmark was within its legal right to refuse to pay the amount demanded by BSM and insist instead upon paying "only the actual cost to" BSM and only after receiving adequate documentation of the actual repairs and the actual cost of those repairs. BSM was not within its legal right to refuse Landmark's request. If there could be a more egregious example of an insured failing to cooperate with an insurer's investigation, it is hard to imagine what that is.

BSM's actions and inactions have made it impossible for Landmark to protect its rights under the Landmark policy. As a matter of law, Landmark has been prejudiced as discussed above and also in that it has incurred the expenses of this lawsuit, and now is at risk of damages being awarded against it for alleged breach of contract and bad faith. All of this is the proximate result of BSM's breach of its contractual obligation to provide the information requested by Landmark in support of the claim.

Because BSM refused and failed to perform its obligations under the insurance contract, to Landmark's prejudice, BSM is precluded from recovering against Landmark for breach of contract. Count I of the first amended complaint therefore should be dismissed.

**F.     BSM Cannot Recover for Breach of Contract Because it Cannot Prove its Damages**

A plaintiff is unable to prove its claim for breach of contract if it cannot prove its damages. *See Sibley v. Sprint Nextel Corp.,* 315 F.R.D. 642, 664 (D. Kan. 2016) ("Sprint notes correctly that a cause of action for breach of contract, under the applicable law of Kansas, includes damages as an element of the cause of action") (*citing City of Andover v. Southwestern Bell Tel., L.P.,* 37 Kan. App. 2d 358, 153 P.3d 561, 565 (Kan. 2007)); *see also Hall-Lopez,* stating that damages are one of the elements of a breach of contract claim. *Id.,* 2021 U.S. Dist. LEXIS 152512 at *8.

Here, BSM's damages are the amount of Landmark insurance policy proceeds BSM was entitled to recover (provided BSM had performed its own obligations under the contract, which it did not do). As discussed in section C. of this incorporated memorandum of law, that amount was "only the actual cost to [BSM]" of the repairs BSM made to each of its vehicles as a result of damages caused by the May 5, 2019 storm. Due to BSM's failure to document the storm damage to each of its vehicles, the repairs actually made to each of its vehicles, and the actual cost of those repairs, BSM has no evidence of its damages. According to BSM and its representatives, no such evidence exists. (See Landmark's SOF Nos. 12-15).

BSM, having rejected all of Landmark's efforts to obtain information supporting BSM's claim and documents supporting its damages, now as a result of its own actions finds itself unable to prove an essential element of its claim for breach of the insurance contract - damages. As a matter of law, BSM's claim must fail and Landmark is entitled to summary judgment on Count I of the first amended complaint.

**G.      BSM's Claim for Breach of the Duty of Good Faith and Fair Dealing Fails As a Matter of Law**

"While Kansas does not recognize a 'tort' of bad faith, Kansas does allow a claim of breach of duty of good faith against an insurer. This claim is contractually based and involves situations where an insurer acts negligently or in 'bad faith breaches...duties to settle and defend.'" ***Cont'l Cas. Co. v. Complete Constr. LLC,*** 2021 U.S. Dist. LEXIS 14788 at *12 (D. Kan. Jan. 27, 2021) (*quoting **Moses v. Halstead,*** 581 F.3d 1248, 1251 (10th Cir. 2009). The court in ***Atl. Specialty Ins. Co. v. Blue Cross & Blue Shield of Kan.,*** 2022 U.S. Dist. LEXIS 31080 at *18-19 (D. Kan. Feb. 22, 2022), discussed a claim for breach of duties arising out of an insurance contract and explained as follows:

> As OneBeacon correctly argues, BCBSKS's claim for breach of the duty of good faith and fair dealing requires it to prove causation and damages. See ***Moses v. Halstead,*** 581 F.3d 1248, 1251, 1251 n.1 (10th Cir. 2009) (explaining that, in "Kansas, an insurer's duties are contractually based" and a claim for breach of the duty of good faith against in insurer "'sounds in contract'" (quoting ***Glenn v. Fleming,*** 799 P.2d 79, 89 (Kan. 1990))); see also ***Wayman v. Amoco Oil Co.,*** 923 F. Supp. 1322, 1359 (D. Kan. 1996) (explaining that breach of the duty of good faith and fair dealing claim requires a plaintiff to: "(1) plead a cause of action for breach of contract, not a separate cause of action for breach of duty of good faith, and (2) point to a term in the contract which the defendant allegedly violated by failing to abide by the good faith spirit of that term" (quotation cleaned up)).

Here, Count II of BSM's first amended complaint alleging breach of the duty of good faith and fair dealing arising out of the Landmark insurance contract fails as a matter of law for all of any of the reasons that BSM's claim for breach of the insurance contract fails. The only term in the Landmark policy with which BSM alleges Landmark failed to comply was the payment of loss provision. However, as discussed above, Landmark's liability under the policy never arose because of the failure of a condition precedent to Landmark's liability and because of BSM's failure to cooperate, which prejudiced Landmark. It is undisputed that Landmark diligently attempted to obtain information necessary to enable it to pay BSM "only the actual cost of repairs" to each of the

vehicles damaged by the storm, but BSM failed and refused to provide this information. Landmark did not breach the insurance contract or any term or provision in it. Therefore, Landmark is entitled to summary judgment on Count II of BSM's first amended complaint.

### H.    Landmark is Entitled to Summary Judgment on BSM's Claim for Attorneys' Fees

Kansas Stat. Ann. § 40-256 provides that, after a judgment against an insurance company for coverage under a policy of insurance, "if it appear[s] from the evidence that such company … has refused without just cause or excuse to pay the full amount of such loss, the court … shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs." In *Wichita Firemen's Relief Ass'n v. Kan. City Life Ins. Co.,* 737 F. App'x 865, 872-73 (10th Cir. 2018), the court held:

> "[T]he phrase 'without just cause or excuse' as used in K.S.A . . . 40-256, means a frivolous and unfounded denial of liability." *Koch v. Prudential Ins. Co. of Am.,* 205 Kan. 561, 470 P.2d 756, 760 (Kan. 1970); see also *Clark Equip. Co. v. Hartford Accident & Indem. Co.,* 227 Kan. 489, 608 P.2d 903, 907 (Kan. 1980) ("[D]enial of liability must be patently without any reasonable foundation [to find for attorney fees.]"); *Allied Mut. Ins. Co. v. Gordon,* 248 Kan. 715, 811 P.2d 1112, 1125 (Kan. 1991) ("Denial of payment that is not arbitrary, capricious, or in bad faith will not give rise to an award of attorney fees.") (citation omitted).

The court in *Wichita Firemen's Relief* further held:

> "[I]f there is a bona fide and reasonable factual ground for contesting the insured's claim, there is no failure to pay 'without just cause or excuse.'" *Koch,* 470 P.2d at 760; accord *Glickman, Inc. v. Home Ins. Co.,* 86 F.3d 997, 1002 (10th Cir. 1996) ("There can be no dispute that under Kansas law the accepted test for determining the existence of 'just cause or excuse' for purposes of § 256 is whether the insurance company's refusal is based on a bona fide controversy over policy coverage.").

-----

> Whether there was a reasonable and non-frivolous ground for denying a claim is "not necessarily determined by the outcome of the ensuing litigation." *Brown v. Combined Ins. Co. of Am.,* 226 Kan. 223, 597 P.2d 1080, 1084 (Kan. 1979) (quoting *Koch,* 470 P.2d at 760). "The statutory penalty is not to be imposed merely

for the reason that it turned out at the trial in the district court, there was, in reality, no reason for denial of liability." ***Koch,*** 470 P.2d at 760.

Here, at the time BSM filed suit, Landmark was not required to pay BSM's demand for a windfall profit on its losses. Landmark had received information, which later turned out to be correct, that the actual cost to BSM of repairs to its vehicles would be substantially less than the amount BSM was claiming under the Landmark policy. Landmark learned that BSM had contracted to pay USA Dent, which repaired the vehicles, only 50% (or between 40% and 60%) of the money it received from Landmark and BSM would keep the rest. In addition, Landmark had legitimate concerns regarding the damages to the vehicles claimed by USA Dent on behalf of BSM. (See, Landmark's SOF No. 9). Landmark had a non-frivolous reason for not paying BSM's demand and insisting, instead, on documentation of the actual damages and the actual cost of the repairs. As a matter of Kansas law, BSM is not entitled to an award of statutory attorney's fees.

## <u>CONCLUSION</u>

For the reasons discussed above, Landmark's motion for summary judgment should be granted and BSM's first amended complaint should be dismissed with prejudice.

Dated: March 31, 2022

/s/ Jean-Paul Assouad

| Jean-Paul Assouad | KS #20692 |
| Larry D. Fields | KS #15753 |

KUTAK ROCK LLP
2300 Main Street, Suite 800
Kansas City, MO  64108
(816) 960-0090 (Telephone)
(816) 960-0041 (Facsimile)
Jean-Paul.Assouad@KutakRock.com
Larry.Fields@KutakRock.com

And

Wayne D. Taylor        *Admitted Pro Hac*
Michelle A. Sherman *Admitted Pro Hac*
MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, GA 30338
(404) 256-0700 (Telephone)
(404) 250-9355 (Facsimile)
wtaylor@mfllaw.com
msherman@mflaw.com
**ATTORNEYS FOR DEFENDANT**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on March 31, 2022, a true and correct copy of the above and foregoing ***Landmark American Insurance Company's Motion for Summary Judgment and Incorporate Memorandum of Law*** was filed with the Clerk of the Court for the District Court of Kansas by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ Jean-Paul Assouad
Attorney for Defendant